UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DIANE CIVITANO,

                               **COMPLAINT**

               Plaintiff,

v.                                              Docket No.:

PAMROB, INC.;                             (Jury Trial Demanded)
and as an individual, PAMELA HOCHSTIN

               Defendants.
------------------------------------------------------------x

      Plaintiff Diane Civitano, by her attorney Clif Bennette, as for her Complaint, alleges:

## NATURE OF THE CASE

1. This is a civil action for damages and equitable relief based upon Defendants' willful violations of Plaintiff's rights:

    (i)   Overtime provisions of Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207(a);

    (ii)  Overtime provisions of the N. Y. Labor Law ("NYLL"), §§ 160 *et seq.* and N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2;

    (iii) Requirement that employers must pay wages to employees pursuant to their terms of employment as mandated by NYLL §§ 190, 191, 663(1);

    (iv) Breach of Contract;

    (v)  Conversion;

    (vi) Breach of the Implied Covenant of Good Faith and Fair Dealing and;

    (vii) any other claim(s) that can be inferred from the facts set forth herein.

      Defendants did not pay Plaintiff the statutorily-required time-and-a-half rate for any hours worked in excess of forty (40) in a work-week. Instead of this premium rate, Defendants paid Plaintiff her regular hourly rate. The difference between those two rates multiplied by an average of 6 hours overtime per week equals about $18,006 for 3 years and $27,064 for 6 years.

      Defendants also paid less than the agreed-upon pay rate for regular hours (i.e. those worked up to forty), for three (3) years. Plaintiff seeks recovery of about $28,086 in underpaid regular wages. Plaintiff also seeks recovery of $1,606 for 6 days of unpaid, accrued vacation pay, liquidated damages and reasonable attorney's fees pursuant to the FLSA and the NYLL.

## JURISDICTION and VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 in that they are so related to Plaintiff's FLSA claim as to form the same case or controversy.

3. Venue is proper under 28 U.S.C. § 1391 because Defendants do business and reside in this District and because a substantial part of the events or omissions giving rise to the claims herein occurred within the District.

## PARTIES

4. At all relevant times, Diane Civitano ("PLAINTIFF") was and is a resident of New York State and entitled to protection as defined by the FLSA, NYLL and NYCRR.

5. At all relevant times Defendants were employers of PLAINTIFF within the definition of the FLSA 29 U.S.C. § 203(d) and the NYLL, and PLAINTIFF was an employee of DEFENDANTS within the definition of FLSA § 203 (e)(1), NYLL, and the NYCRR.

6. Pamela Hochstin and Pamrob. Inc. ("DEFENDANTS") paid PLAINTIFF on a full-time, hourly basis from May 1, 2010 until termination December 2, 2016.

7. Upon information and belief, at all relevant times DEFENDANTS' qualifying annual business revenues exceeded $500,000. Because they did and do business in several states, they engaged in interstate commerce within the meaning of FLSA (29 U.S.C. § 203) and the NYLL.

8. Such business and commerce subjects DEFENDANTS to the FLSA's overtime requirements as an enterprise. Further, Defendants' employees, including PLAINTIFF, were individually engaged in interstate commerce, as they routinely handled goods that have been, and continue to be, moved in interstate commerce.

9. Upon information and belief, DEFENDANT Pamela Hochstin resides in the State of New York and is DEFENDANT Pamrob's owner, manager and primary shareholder.

10. At all relevant times, DEFENDANT Pamrob had less than ten (10) shareholders and is organized as a domestic, for-profit LLC with its principal place of business at 10 Chase Road, Scarsdale, N.Y. 10583.

11. A request to inspect the records of Pamrob shareholders was made months ago to DEFENDANT's counsel pursuant to BCL §§ 624, 630(a). Specifically, an examination of the "record containing the names and addresses of all shareholders, the number and class of shares held by each, and the dates they respectively became owners of record as the company. BCL § 624(b) and 29 CFR § 516.7 provide that inspection commence within five (5) days of request.

12. DEFENDANT's counsel has not responded to that request (see attached Exhibit 1).

## BACKGROUND FACTS

13. DEFENDANT Pamrob is a retail clothing business located in Westchester County.

14. In her capacity as owner, Ms. Hochstin made all decisions with respect to setting work schedules, manner of compensation, maintaining employment records and providing the required notice and wage statements to all Pamrob's non-exempt employees, including PLAINTIFF.

15. Around May 1, 2010 PLAINTIFF entered into an oral employment contract with DEFENDANTS by exchanging mutual promises.

16. DEFENDANTS never assigned to PLAINTIFF a job title.

17. However, the parties agreed PLAINTIFF would be paid on an hourly basis at a fixed rate in "net" rather than "gross" dollars.

18. PLAINTIFF estimated gross hourly rates of about $27.43, $30.93 and $32.56 per hour (respectively) for the years 2014 – 2016 based on promised net pay.

19. PLAINTIFF'S main duties included stocking (e.g. receiving shipments and opening boxes) and billing-related tasks (e.g. letter correspondence, telephone calls) as a liaison to vendors, some located out-of-state. Other duties included selling apparel to customers in the tri-state area, light bookkeeping, straightening up the store, and running errands for the owner.

20. In addition to their explicit promises, the parties' agreement contained an implied covenant of good faith and fair dealing.

21. DEFENDANTS required and PLAINTIFF worked on average, forty-six (46) hours in a typical Monday - Friday work-week throughout her employment. PLAINTIFF worked over 40 hours more than 90% of the time she was employed at Pamrob.

22. PLAINTIFF opened the store three (3) hours early on nearly all Wednesdays and Fridays over six (6) years, so cleaning staff could enter the building.

23. In addition to this routine overtime, PLAINTIFF worked about three (3) hours overtime for each of 3 days to help set up the store for its annual Sidewalk Sales event.

24. PLAINTIFF worked overtime about twice per month until June 2016 and once a week thereafter when the owner asked her to open the store early for a particular customer. She worked overtime serving customers after 6 p.m. two - three times a month and on other occasions.

25. DEFENDANTS always underpaid PLAINTIFF for hours worked in excess of 40 in a work-week, paying her regular rate rather than time and a half, as required by FLSA and NYLL.

26. Upon information and belief, DEFENDANTS engaged in common policies, practices and patterns of conduct resulting in underpayment to similarly-situated employees for all hours worked over 40.

27. Upon information and belief, DEFENDANTS' failure to adequately compensate PLAINTIFF was a "willful" violation of FLSA overtime pay requirements, as defined in FLSA 29 U.S.C. § 255(a) and NYLL (see Exhibit 2 showing "Pam discussed" what "should've been paid" with Paychex staff).

28. Upon information and belief, DEFENDANTS failed to maintain employment records required by FLSA 29 U.S.C. § 211(c) for most of PLAINTIFF's employ. Such records should accurately reflect *inter alia*, the amount of social security, tax and health insurance withholdings deducted from PLAINTIFF's wages, as well as hours worked, regular and overtime pay rates for each hour worked over 40 in a given workweek § 195(3).

29. At all relevant times, DEFENDANTS did not provide NYLL's required notice of, in part, deductions taken from employees' pay, wage and overtime rights, and whether employees' earned vacation is paid at termination.

30. DEFENDANTS failed to provide PLAINTIFF with proper wage statements accurately reflecting *inter alia*, the number of overtime hours worked on each occasion DEFENDANTS paid her before 2015 and some times thereafter.

31. Instead, DEFENDANTS issued "generic" company paychecks to all employees, identifying only the net amount paid, not gross pay or deductions.

32. DEFENDANTS also failed to pay PLAINTIFF at agreed-upon regular hourly rates of $27.43, $30.93 and $32.56 for 2014 – 2016 (respectively), instead compensating her at rates of about $23.72, $25.66 and $27.66.

33. PLAINTIFF made inquiry but could not verify whether DEFENDANTS paid and transmitted the mandated amount of withholdings for old-age and unemployment benefits in 2013 pursuant to the Federal Insurance Contributions and Federal Unemployment Tax Acts.

34. PLAINTIFF asked Ms. Hochstin many times for clarification regarding wages and the amount of deductions withheld (see Exhibit 2 discussing "retro pay").

35. PLAINTIFF complained and questioned Ms. Hochstin about why the amount of social security monies on her W-2 form was not reflected in her social security account

36. PLAINTIFF informed Ms. Hochstin about errors in three (3) of Pamrob employees' tax withholdings and I.R.S. letters to those employees demanding thousands in 2014 back taxes because of these errors.

37. PLAINTIFF fears she will face the same liability based on the same "mistakes" DEFENDANTS made in 2014 regarding those employees' withholdings.

38. Upon information and belief, DEFENDANTS made deductions from all its employees' wages for social security and other taxes, but never reported or paid those withholdings on their behalf.

39. In the owner's presence, the company's bookkeeper told PLAINTIFF that Pamrob had made errors in the amounts deducted from her pay.

40. Upon information and belief, DEFENDANTS' acts and practices by which all employees (including PLAINTIFF) were underpaid, were intentional or performed with callous disregard for her protected rights.

41. Because such practices were done by and with their direct knowledge or in reckless disregard of its duty, imposition of punitive damages is warranted.

42. Upon information and belief, DEFENDANTS acted in the manner described herein to maximize profits and cash flow while minimizing labor costs.

43. Upon information and belief, DEFENDANTS knew their underpayments would economically injure PLAINTIFF and violate the FLSA and the NYSLL.

## FIRST CAUSE OF ACTION

### *Underpaid Overtime under the FLSA*

44. PLAINTIFF repeats, reiterates, and re-alleges every allegation set forth above with the same force and effect as if more fully set forth herein.

45. Employers are required to pay employees at a rate not less than one and a half times their regular rate for all hours worked over forty in a workweek pursuant to 29 U.S.C. § 207(a).

46. PLAINTIFF worked on average about six (6) hours in excess of forty in a workweek, yet DEFENDANTS failed to compensate her in accordance with the FLSA's overtime provisions.

47. DEFENDANTS willfully underpaid PLAINTIFF for all hours worked per workweek in excess of forty by paying her regular wage rate despite her entitlement to time-and-a-half, from around December 22, 2014 until December 2, 2016.

48. DEFENDANTS' failure to pay time-and-a-half violates the FLSA and as a result, DEFENDANTS owe PLAINTIFF about $12,569 in underpaid overtime compensation, plus an equal amount (i.e. $12,569) as liquidated damages. DEFENDANTS also owe PLAINTIFF for reasonable attorney's fees in an amount to be determined.

## SECOND CAUSE OF ACTION

### *Underpaid Overtime under the NYLL and NYCRR*

49. PLAINTIFF repeats, reiterates, and re-alleges every allegation set forth above with the same force and effect as if more fully set forth herein.

50. NYLL § 160 and 12 NYCRR § 142-2.2 require employers to compensate employees at a rate-of-pay not less than one and a half times their regular rate for all hours worked exceeding forty (40) in a workweek.

51. PLAINTIFF worked on average about six (6) hours in excess of forty (40), yet DEFENDANTS failed to compensate her pursuant to NYLL and NYCRR's overtime provisions.

52. DEFENDANTS willfully underpaid PLAINTIFF, paying her regular wage rate instead of 1.5 times that rate from about December 22, 2011 to December 2, 2016.

53. Underpaying employees violates NYLL and as a result, there is due and owing from DEFENDANTS to PLAINTIFF, underpaid overtime compensation of about $24,393 plus an additional 25% (i.e. $6,098) as liquidated damages. Another sum to be determined, is also due and owing from DEFENDANTS for reasonable attorney fees.

## THIRD CAUSE OF ACTION

### *Failure to Pay Wages in Violation of the NYLL and NYCRR*

54. PLAINTIFF repeats, reiterates and re-alleges every allegation set forth above with the same force and effect as if more fully set forth herein.

55. NYLL §§ 190, 191, and 663(1) require that employers pay their employees pursuant to their terms of employment, e.g. agreed-upon pay rates.

56. Yet, DEFENDANTS paid PLAINTIFF less than the agreed-upon pay rates of $27.43, $30.93 and $32.56 per hour (respectively) for the years 2014 – 2016. Instead, PLAINTIFF was paid rates of $23.72, $25.66 and $27.66 per hour for forty hours for 52 weeks during those years (except 2016 where she was paid for 48 weeks).

57. DEFENDANTS failed to adequately compensate PLAINTIFF pursuant to the terms of employment so is entitled to recover wages for hours she was underpaid.

58. About $28,086 is due and owing from DEFENDANTS to PLAINTIFF, i.e. the difference between the lower pay rates DEFENDANTS used to calculate wages, and the higher, agreed-upon rates promised.

59. DEFENDANTS' actions were a willful violation of the NYLL.

60. PLAINTIFF is entitled to liquidated damages, interest, and attorneys' fees for DEFENDANTS' failure to pay wages in accordance with the agreed-upon terms of employment.

## FOURTH CAUSE OF ACTION

### *Breach of Contract – in the alternative*

61. PLAINTIFF repeats, reiterates, and re-alleges every allegation set forth above with the same force and effect as if more fully set forth herein.

62. PLAINTIFF entered into an oral employment contract around May 1, 2010 by exchanging mutual promises with the DEFENDANTS.

63. PLAINTIFF accepted DEFENDANTS' promises to pay a fixed hourly rate and vacation pay, in exchange for her promise to work at DEFENDANTS store for an indefinite term.

64. The contract did not provide for DEFENDANTS paying PLAINTIFF less than the agreed-upon rate-of-pay under any circumstances.

65. The agreement was a valid contract that could have been performed within one year.

66. PLAINTIFF performed her work obligations and duties under the parties' agreement, as evidenced by DEFENDANTS giving PLAINTIFF repeated pay raises and a severance offer.

67. Nevertheless, DEFENDANTS breached the parties' employment contract by paying PLAINTIFF less than the agreed-upon rate for the years 2014 – 2016, underpaying by $28,086.

68. DEFENDANTS also did not pay PLAINTIFF $1,606 for six (6) days of earned vacation pay as promised (calculation: [$32.56/hour * 8.16 hours] + [$33.66/hour * 29.84 hours]).

69. PLAINTIFF was damaged as a direct and proximate result of DEFENDANTS' breach.

## FIFTH CAUSE OF ACTION

### *Breach of the Covenant of Good Faith and Fair Dealing – in the alternative*

70. PLAINTIFF repeats, reiterates, and re-alleges every allegation set forth above with the same force and effect as if more fully set forth herein.

71. Both parties owed each other an implied duty of good faith and fair dealing to refrain from doing anything to injure the other party's right to receive the fruits of their contract.

72. That duty engendered the reasonable expectation that DEFENDANTS act honestly by obeying tax and social security law and refraining from fraudulent conduct.

73. Notwithstanding that consideration was exchanged in the form of mutual promises, PLAINTIFF justifiably relied on DEFENDANTS' explicit, agreed-upon terms of employment, as well as their implied promise to act legally to her detriment. She continued working almost seven (7) years for DEFENDANTS, foregoing better employment opportunities.

74. The DEFENDANTS should have reasonably expected PLAINTIFF's reliance.

75. On information and belief, DEFENDANTS withheld monies from her wages for tax purposes but intentionally did not report nor transmit those withholdings on PLAINTIFF's behalf.

76. Not reporting or paying deductions violates tax and social security law and manifests DEFENDANTS' bad faith and unfair dealing.

77. Pamrob's desire to serve its own financial interests motivated its illegal activity.

78. Unlawful acts motivated by bad faith are against public policy and offend the implied covenant of good faith and fair dealing.

79. Therefore, DEFENDANTS impaired PLAINTIFF's right to receive the fruits of her employment contract and breached its duty of good faith.

80. As a direct and proximate result of DEFENDANTS' breach, PLAINTIFF has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### *Conversion*

81. PLAINTIFF repeats, reiterates, and re-alleges every allegation set forth above with the same force and effect as if more fully set forth herein.

82. Upon information and belief, all employees were paid wages via a generic company check until around January 2015.

83. Upon information and belief, although deductions were made to every employee's paycheck for social security and tax withholdings, DEFENDANTS intentionally failed to transmit those monies to the appropriate authorities in 2013 and perhaps all years of PLAINTIFF's employ.

84. PLAINTIFF made numerous inquiries to DEFENDANTS regarding the accuracy and legality of its deductions.

85. DEFENDANTS initially refused to provide a credible answer but eventually admitted "errors" had been made with employee deductions.

86. PLAINTIFF requested the return of misappropriated monies but only received a partial reimbursement.

87. As a direct and proximate result of DEFENDANTS' fraud and conversion, PLAINTIFF suffered economic loss and other compensable damages.

88. PLAINTIFF is entitled to proof DEFENDANTS transmitted PLAINTIFF's deductions to the appropriate authorities or the safe return of her money, at no cost.

## **PRAYER FOR RELIEF**

**WHEREFORE**, cause having been shown, PLAINTIFF respectfully prays for judgment jointly and severally against DEFENDANTS as follows:

1. For an Order declaring DEFENDANTS' wage payment policies and practices violate PLAINTIFF's rights under the FLSA, NYLL and NYCRR, pursuant to 28 U.S.C §§ 2201, 2202;

2. As to the FIRST CAUSE OF ACTION, for an Order awarding to PLAINTIFF her underpaid overtime wages due in the approximate amount of $12,569 pursuant to the FLSA, together with maximum liquidated damages;

3. As to the SECOND CAUSE OF ACTION, for an Order awarding $24,393 of underpaid overtime wages and a 25% liquidated damages penalty pursuant to NYLL;

4. As to the THIRD CAUSE OF ACTION, for an Order awarding $28,086 in outstanding (regular) wages;

5. As to the FOURTH CAUSE OF ACTION, for an Order awarding PLAINTIFF damages in amounts determined at trial but estimated at $28,086 for underpaid regular wages and $1,606 for six (6) accrued, unused vacation days pursuant to NYLL §198-c(1);

6. As to the FIFTH CAUSE OF ACTION, Order the same award given for breach of contract;

7. As to the SIXTH CAUSE OF ACTION, for an Order that DEFENDANTS provide an accounting without cost to PLAINTIFF, of the social security and tax deductions DEFENDANTS withheld from her pay for the years 2010 – 2016. And, an Order that DEFENDANTS prove to this Court (and PLAINTIFF) that the proper amount of social security and tax withholdings have been reported to the appropriate authority, or, an Order for DEFENDANTS to return PLAINTIFF's deductions at no cost;

8. For an Order awarding PLAINTIFF the costs of this action, including payment of reasonable attorney's fees pursuant to 29 U.S.C. § 216(b), NYLL § 633 and other applicable statutes.

9. Order an award to PLAINTIFF of "pre" and post-judgment interest;

10. Order an award to PLAINTIFF of punitive damages calculated to be sufficient to deter the aforesaid criminal activity and misconduct in the future, and;

11. Order an award to PLAINTIFF and employees similarly-situated such further relief as this court deems just and proper.

Pursuant to Fed. R. Civ. P. 38, PLAINTIFF demands a trial by jury for all claims entitled.

Dated: Mt. Kisco, N.Y.
      December 22, 2017

                              Respectfully submitted,

By: _____
      Cliffith D. Bennette, Esq. (4750816)
      *Counsel for Plaintiff*

25 Christopher Road
Mt. Kisco, N.Y. 10549
cbennette1@verizon.net
914-346-7009
678-466-7009 (f)